Laura Luisi (to be admitted *Pro Hac Vice*)
Jamie Holz (to be admitted *Pro Hac Vice*)
**LUISI HOLZ LAW**
LuisiL@luisiholzlaw.com
HolzJ@luisiholzlaw.com
161 N. Clark Street, Suite 1600
Chicago, Illinois 60601
Tel: (312) 639-4478

**FRANKEL SYVERSON PLLC**
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
602-598-4000
Ty D. Frankel (AZ# 027179)
ty@frankelsyverson.com
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
602-598-4000
Patricia N. Syverson (AZ# 020191)
patti@frankelsyverson.com
*Attorneys for Plaintiff and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Erik Watt, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **[JURY TRIAL DEMANDED]** |
| Trulieve Holdings, Inc.; Trulieve Cannabis Corp.; Harvest Dispensaries, Cultivations & Production Facilities LLC; Svaccha, LLC; High Desert Healing, L.L.C.; Medical Pain Relief, Inc.; Sherri Dunn, L.L.C.; Pahana, Inc.; Nature Med, Inc.; Sweet 5, LLC; Green Desert Patient Center of Peoria, Inc.; Ad, LLC; Kwerles, Inc.; Mohave Valley Consulting, LLC; Abedon Saiz, L.L.C.; Byers Dispensary, Inc.; Green Sky Patient Center of Scottsdale North, Inc.; Cochise County Wellness, LLC; The Giving Tree Wellness Center Of Mesa, Inc.; Fort Mountain Consulting, LLC; Patient Care Center 301, Inc.; Purplemed, Inc.; | |
| Defendants. | |

Plaintiff Erik Watt ("Plaintiff"), individually and on behalf of others similarly situated, by and through his undersigned counsel, for his Class Action Complaint against Defendants Trulieve Holdings, Inc., Trulieve Cannabis Corp., Harvest Dispensaries, Cultivations & Production Facilities LLC, Svaccha, LLC, High Desert Healing, L.L.C., Medical Pain Relief, Inc., Sherri Dunn, L.L.C., Pahana, Inc., Nature Med, Inc., Sweet 5, LLC, Green Desert Patient Center of Peoria, Inc., Ad, LLC, Kwerles, Inc., Mohave Valley Consulting, LLC, Abedon Saiz, L.L.C., Byers Dispensary, Inc., Green Sky Patient Center of Scottsdale North, Inc., Cochise County Wellness, LLC, The Giving Tree Wellness Center of Mesa, Inc., Fort Mountain Consulting, LLC, Patient Care Center 301, Inc., and Purplemed, Inc. (collectively "Defendants" or "Trulieve"), based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation by counsel and review of public documents as to other matters, state as follows.

## NATURE OF THE ACTION

1. Plaintiff brings this action against Defendants for unlawfully selling potent marijuana-infused edible food products ("Edibles") with excessively high tetrahydrocannabinol ("THC") content—well above the applicable legal limits imposed under Arizona and Florida law for consumers' health and safety.

2. Defendants masquerade these Edibles as legal for purchase and consumption in Arizona; in actuality, however, the products vastly exceed the applicable THC limits for Edibles as well as the personal possession limits for those products, in some instances. This subjects purchasers to risks of adverse effects associated with overconsumption of THC as well as legal risks for possession of illegal products.

3. This is a civil action brought pursuant to Federal Rule of Civil Procedure ("Rule") 23 for violations of the Arizona Consumer Fraud Act (A.R.S. § 44-1521, *et seq.*) and consumer fraud statutes in other similarly situated states, common law torts of fraud and fraudulent concealment, breach of the implied warranty of merchantability, strict liability, and a claim for unjust enrichment. Defendants operate a dispensary chain

throughout Arizona, Florida, and various other states, where they are selling improperly labeled highly potent marijuana Edibles in single packages that violate applicable laws by containing up to 10 times the legal per-package limit of THC.

4.    Defendants sell edible oil products including Rick Simpson Oil ("RSO"), Hash Oil, and Full Spectrum Hash Oil ("FSHO") (each referred to as an "Edible Oil").

5.    Defendants also sell various edible marijuana-infused food products, including gummies, that violate the maximum 10 milligram per dose requirement under both Arizona and Florida law (the "Macro Dose Edibles" and collectively with the Edible Oils the "Illegal Edibles").

6.    Defendants have been selling improperly labeled Illegal Edibles in the 22 dispensaries it operates in Arizona and whopping 162 dispensaries it operates in Florida.

7.    Through various third-party brands, Defendants sell Illegal Edible Oils, for example, in 1-gram and 500-milligram syringes.



8.    The Illegal Edible Oils are high-potency and induce powerful psychoactive effects.

9.    Standard packages of Edibles typically contain 100 milligrams of THC, split into 10 servings or more.

10.    By contrast, a single 1-gram syringe of the Edible Oils Defendants sell can contain as much THC as *10 standard Edible packages*.  In other words, 1 gram of Edible Oils can contain as much THC as 100 *standard servings* of Edibles.

11.    Defendants also sell Macro Dose Edibles at their dispensaries that exceed the 10-milligram dosage limitation per Edible, including, without limitation, JAMS Jellies (1x50mg), XBites (2x50mg), Tipsy Turtle Sand Dollar (1x100mg), Power Puck Gummie (4x27.5mg), Krispie PB Cocoas (3x200mg), Krispie Fruits (3x100mg), and Brix (1x1,000mg).

  

12.    Under Arizona law, marijuana infused food products (*i.e.* those intended for ingesting), such as the Edible Oils and Macro Dose Edibles, are not allowed to contain more than 100 milligrams of THC per package. A.R.S § 36-2854(A)(7).

13.    Under Florida law, marijuana infused food products (*i.e.* those intended for ingesting), such as the Edible Oils and Macro Dose Edibles, are not allowed to contain more than 200 milligrams of THC per package.  Fla. Stat. Ann. § 381.986 (8)(e)8; Fla. Admin. Code. Ann. R. 64E22-8.

14.    Despite this, the Illegal Edibles Defendants are selling exceed these limits although Defendants are marketing Edible Oils as marijuana concentrates or extracts, both on their personal social media pages and websites, in addition to their product listings on their own dispensary websites, and marketing Macro Dose Edibles as appropriately dosed as a single serving.

15.    Defendants have made a windfall because marijuana concentrates are not subject to any per package limits.

16.    Accordingly, Defendants are selling improperly packaged and portioned Edible Oils in up to 1-gram packages, universally exceeding the legal THC limits imposed on individual packages of Edibles in those states.

17.    In doing so, Defendants intentionally or recklessly misrepresented that the Edible Oils they are selling are marijuana concentrates instead of unlawful Edibles.

18.    On information and belief, Defendants intentionally or recklessly made this misrepresentation to deceive regulators and consumers in order to allow Defendants to sell Edible Oils as concentrate to bypass the 100-milligram per Edible package limit.

19.    The average Edible gummy package, for example, costs $10-18, whereas the average 1-gram Edible Oil package retails for $30 or more.

20.    Marijuana manufacturers and dispensaries created Macro Dose Edibles in order to meet the Edible food product demands of high-potency Edible Oil users.

21.    This allows Defendants to sell, and promotes consumers to ingest, far more THC in a single Edible package than is allowed by law.

22.    Plaintiff and other consumers were being misled to believe that they were purchasing a legal marijuana product that complies with statutorily imposed limits, featuring the required labels, warnings, and packaging.  This deception continues to this day.

23.    As a result, consumers were, and continue to be overcharged, placed at risk from overconsuming illegal product, and incurring other consequential damages and harm.

## PARTIES

24.    Plaintiff Erik Watt is a citizen of the State of Arizona and a resident of Maricopa County.

25.    Defendant Svaccha, LLC is an Arizona limited liability company licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq.*

5

26.    Defendant High Desert Healing, L.L.C. is an Arizona limited liability company licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq*.

27.    Defendant Medical Pain Relief, Inc. is an Arizona corporation licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq*.

28.    Defendant Sherri Dunn, L.L.C. is an Arizona limited liability company licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq*.

29.    Defendant Pahana, Inc. is an Arizona corporation licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq*.

30.    Defendant Nature Med, Inc. is an Arizona corporation licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq*.

31.    Defendant Sweet 5, LLC is an Arizona limited liability company licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq*.

32.    Defendant Green Desert Patient Center of Peoria, Inc. is an Arizona limited liability company licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq*.

33.    Defendant Ad, LLC is an Arizona limited liability company licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq*.

34.    Defendant Kwerles, Inc. is an Arizona corporation licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq*.

35.    Defendant Mohave Valley Consulting, LLC is an Arizona limited liability company licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq.*

36.    Defendant Abedon Saiz, L.L.C. is an Arizona limited liability company licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq.*

37.    Defendant Byers Dispensary, Inc. is an Arizona corporation licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq.*

38.    Defendant Green Sky Patient Center of Scottsdale North, Inc. is an Arizona corporation licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq.*

39.    Defendant Cochise County Wellness, LLC is an Arizona limited liability company licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq.*

40.    Defendant The Giving Tree Wellness Center of Mesa, Inc. is an Arizona corporation registered as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq.*

41.    Defendant Fort Mountain Consulting, LLC is an Arizona limited liability company licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq.*

42.    Defendant Patient Care Center 301, Inc. is an Arizona corporation licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq.*

43.    Defendant Purplemed, Inc. is an Arizona corporation licensed as a Marijuana Establishment under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq.*

44. Defendant Harvest Dispensaries, Cultivations & Production Facilities LLC is an Arizona limited liability company and is an affiliate, parent company, and/or alter ego of Trulieve's entities registered as a Marijuana Establishments under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq*.

45. Defendant Trulieve Holdings, Inc. is a Delaware limited liability company registered to do business in the State of Arizona and is an affiliate, parent company, and/or alter ego of Trulieve's entities registered as a Marijuana Establishments under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq*.

46. Defendant Trulieve Cannabis Corp. is an international corporation with its headquarters in Quincy, Florida and is an affiliate, parent company, and/or alter ego of Trulieve's entities registered as a Marijuana Establishments under the Smart and Safe Arizona Act, A.R.S § 36-2850 *et seq*. and/or Arizona Medical Marijuana Act, A.R.S § 36-2801 *et seq*.

47. The aforementioned Trulieve entities operate as one entity under the umbrella of the parent company referred to as "Trulieve" and are publicly traded on Canada's Securities Exchange under "TRUL" and the U.S. OTCQX under "TCNNF."

**MARIJUANA INDUSTRY CORPORATE STRUCTURING**

48. Due to the federal illegality of marijuana and robust regulatory schemes that vary from state to state, the marijuana industry maintains unique organizational designs.

49. Operationally, the unavailability of traditional financing and banking services poses certain challenges.

50. Of particular note is the unique nature of paying and filing taxes as a marijuana entity, where the federal tax code does not contemplate the sale of marijuana as

a legal business.  Specifically, IRS Code Section 280E prohibits a Federally illegal business from claiming any deductions and credits thereunder.[1]

51.     To account for the dichotomy of the situation, marijuana companies created complicated, but integrated, corporate structures.

52.     As a general practice, many marijuana companies may maintain separate entities to hire their employees, hold their licenses and equipment, contract with vendors, and a host of other functions.

53.     While these entities may be separate on paper or in corporate filings, they are functionally one entity operating under a large umbrella of entities.

54.     Marijuana companies also tend to be "vertically-integrated," meaning that they perform all functions throughout the life cycle of a marijuana plant, from growing, harvesting, processing, and selling.

55.     Defendants follow suit by selling their own products under one national portfolio of brands, including Trulieve, Roll One, Momenta, and other brand names through their national dispensary chain, where they sell in-house and third-party brands of Illegal Edibles.

56.     The Defendant entities share such a unity of interest and ownership that the separate personalities of the corporations and/or individuals no longer exist.

57.     These entities share executive management and c-suite executives, policies and practices, payroll, internal support functions, and other resources.

58.     The aforementioned Trulieve entities operate as a single, centralized entity through Trulieve's parent companies.

---

[1] https://www.irs.gov/about-irs/providing-resources-to-help-cannabis-business-owners-successfully-navigate-unique-tax-responsibilities (last visited March 18, 2025); https://www.foxrothschild.com/publications/high-time-for-cannabis-businesses-to-start-tax-planning (last visited March 18, 2025); https://greengrowthcpas.com/cannabis-business-tax-guide/#:~:text=One%20key%20strategy%20is%2 0to, water%2C%20and%20nutrients%20for%20cultivation (last visited March 18, 2025).

59.    Defendants hold themselves out as one integrated system and operate as such, including by allowing consumers to search nationally on their website for one of their dispensaries.[2]



60.    Such control and integration identified and discussed further in Defendants' public filings, including that of Trulieve Cannabis Corp. in its Form 10-K for the quarterly period ending September 30, 2024.[4]   That filing explains that:

> Trulieve is a vertically integrated cannabis company and multi-state operator with operations in nine states.   Headquartered in Quincy, Florida, we are the largest cannabis retailer in the United States with market leading retail operations in Arizona, Florida, Georgia, Pennsylvania, and West Virginia. The Company operates in highly regulated markets that require expertise in cultivation, manufacturing, and retail.   We have developed proficiencies in each of these functional areas and are passionate about expanding access to

---

[2] *See* https://www.trulieve.com/brands (last visited Nov. 19, 2024).
[3] https://www.trulieve.com/dispensaries (last visited Feb. 17, 2025).
[4] *Available at*
https://filecache.investorroom.com/mr5ircnw_trulieve/490/TCNNF%20Trulieve%20Cannabis%20Corp%20Sub%20Voting%2010-K%202025-02-27.pdf.

regulated cannabis products through advocacy, education and expansion of our distribution network. . . . Trulieve operates its business through its directly and indirectly owned subsidiaries which hold licenses and have entered into managed service agreements in the states in which they operate. *Id* at 21.

## JURISDICTION

61.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a State different from a Defendant.

62.     The Court has personal jurisdiction over Defendants because they sold Illegal Edibles to consumers in Arizona, including Plaintiff.  Defendants have been doing business in Arizona during all relevant times.  Directly and through their agents, Defendants have substantial contacts with Arizona (including acquiring State of Arizona licensure to cultivate and dispense marijuana), have purposefully availed themselves of the Arizona market, and have received substantial benefits and income from Arizona, including maintaining at least 21 licenses to grow and sell marijuana in the State of Arizona.

63.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendants would be subject to personal jurisdiction in this District if this District were a separate State, given that Defendants sold Illegal Edibles to consumers in this District, including Plaintiff.  Venue is also proper under 28 U.S.C. § 1391(d) because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including the sale of Illegal Edibles to Plaintiff.

## COMMON FACTS

### RICK SIMPSON OIL

64.     RSO is a highly potent marijuana product named after an individual, Rick Simpson, who initially developed and popularized this type of marijuana oil.[5]

65.     Rick Simpson was a Canadian medical marijuana activist who reportedly treated his own cancer by using RSO.

---

[5] *See* https://www.trulieve.com/discover/blog/what-is-rick-simpson-oil-rso (last visited March 18, 2025).

66.     RSO is very high in THC content, with a syrupy consistency and powerful effects. RSO is dark in color (sometimes black) and sticky to the touch.

67.     RSO is traditionally made by utilizing solvents, oftentimes ethanol, to extract certain compounds of the marijuana plant.

68.     In the best-case scenario, the solvent is entirely evaporated throughout the extraction process, leaving behind a dense, potent oil known as RSO.

69.     RSO is often sold in half and full gram packages.

70.     Because of the claims made by Rick Simpson himself, this product is oftentimes eaten by patients with cancer and other serious ailments.

71.     The oil is typically sold in a Syringe device, which has a clear tubing structure that allows the consumer to see the oil.

**HASH OIL AND FULL SPECTRUM HASH OIL**

72.     FSHO and Hash Oil are also potent products with very high THC content.

73.     Full spectrum extracts attempt to capture and preserve purportedly beneficial compounds in the cannabis plant.

74.     FSHO and Hash Oil are often sold in half and full gram doses with high potencies.

**DISTILLATE**

75.     Marijuana distillate is highly purified marijuana oil which contains a very high concentration of one cannabinoid, such as THC, for example.

76.     The creation of distillate requires an extensive distillation process which systematically eliminates all compounds but for one specific cannabinoid, such as THC.

77.     Distillates are typically produced using an alcohol extraction and intended to be eaten on their own or mixed with other food products.

**MACRO DOSE EDIBLES**

78.     The marijuana industry generally recognizes that 10 milligrams of THC is the standard serving of marijuana-infused edible.

79.    That standard is reflected in the laws of Arizona, and most other states in the nation where cannabis products are allowed to be sold, like Florida, which also limits the lawful serving sizes of edible marijuana products to 10 milligrams of THC.

80.    Therefore, Macro Dose Edibles, namely those edible marijuana products which contain more than 10 milligrams of THC per serving, are illegal under Arizona and Florida law.

**USING EDIBLE OILS: DABLICATORS AND SYRINGES**

81.    Edible Oils are regularly sold by Defendants in either a Dablicator or Syringe device, both of which typically have a tubing structure that allows the consumer to see the oil.

82.    In order to dispense Edible Oils with a Dablicator, a user twists the Dablicator, which pushes the doser tab down through a series of notches to determine dosing size.  The user then pushes the tab to force the Edible Oil out of the other end.

83.    Per the makers of Dablicator, each 'notch' that is included in the "bi-directional twist-up dosage selector" is either a 25- or 55- milligram serving of Edible Oil.[6]

84.    Dablicators are made by a third-party company and are widely utilized for dispensing marijuana oils of all varieties.

85.    Syringes, which are utilized by certain products sold by Defendants, do not have a dosing mechanism and a user simply pushes the syringe to dispense the oil.

/ / /

/ / /

/ / /

/ / /

---

[6] *See Dablicator Calculator 3.2 Hardware Dosing*, https://static1.squarespace.com/static/5ef3eb1ab312175594e923e7/t/66e9b81400a9ed3d3cb50ec0/1726593044852/Dablicator_3.2-dosing.jpg (last visited March 18, 2025); *Dablicator Calculator 4.0 Hardware Dosing*, https://static1.squarespace.com/static/5ef3eb1ab312175594e923e7/t/66e9b854acd76008aa7b14bb/1726593108784/Dablicator_4.0-dosing.jpg (last visited Feb. 17, 2025); *Dablicator Oil Applicator Anatomy*, https://dablicator.com/ (last visited March 18, 2025).



**The Dablicator™ Oil Applicator Anatomy**

1. Bi-directional twist-up dosage selector
2. Twist and push for a repeatable dose, with 25mg dosing lines
3. Area available for partner branding
4. Shatter-resistant, BPA-free tank available in 0.6mL and 1.2mL sizes
5. Brandable, snap-on cap that protects tip and prevents leakage
6. Heat-resistant, metal Direct Dab Tip™ for direct application of oil

## MEDICINAL AND ADULT USE MARIJUANA IN THE STATE OF ARIZONA AND EFFORTS TO CREATE A SAFE AND LEGAL MARIJUANA MARKET

86.     In 2010, finding that the adoption of rules to regulate marijuana use is necessary for the public interest, safety, and welfare of its citizens, the State of Arizona authorized the cultivation, dispensing, and use of marijuana for medicinal purposes, passing the Arizona Medical Marijuana Act (the "AMMA").

87.     Arizona adopted laws allowing medicinal marijuana use because of the therapeutic and beneficial value it could provide to Arizonians suffering from debilitating illnesses and to protect registered qualifying patients who have a medical need to use marijuana from legal prosecution and arrest.

88.     In 2020, the Smart and Safe Arizona Act (the "SSAA" or "Responsible Adult Use of Marijuana") was signed into law to legalize the possession and use of recreational marijuana by persons over the age of 21 in the State of Arizona, subject to certain limitations on use and possession.

89.     The Arizona Department of Health Services (the "ADHS") is responsible for licensing and regulating medical and adult-use marijuana programs, marijuana retail sales, marijuana production, and testing facilities in Arizona.

14

90.    The ADHS and various State agencies with rule-making power over the sale, use, and harvesting of marijuana products regulate, among other items, the amount of THC that can be in a particular product and possessed by a person, dosages, labeling, packaging, and warning requirements.

**LEGAL PRODUCTS UNDER ARIZONA LAW**

91.    The production and manufacture of marijuana products is limited to appropriately licensed entities in the State of Arizona, which are referred to as "Marijuana Establishments."

92.    Arizona provides for a vertically integrated system where each license is a general Marijuana Establishment license that permits the holder to acquire, cultivate, process, manufacture, transfer, supply, and/or dispense medical and/or adult use marijuana.

93.    The SSAA and AMMA (together the "Arizona Marijuana Acts") regulates the general categories of marijuana products permitted to be manufactured, packaged, and sold to retail consumers in the State of Arizona. Among them are: (1) marijuana concentrates; and (2) marijuana products that are composed of marijuana and intended for use or consumption, including Edible food products. *See* A.R.S § 36-2801 and A.R.S § 36-2850.

94.    The relevant definitions in the Arizona Marijuana Acts are:

"**Marijuana products**" means marijuana concentrate and products that are composed of marijuana and other ingredients and that are intended for use or consumption, including edible products, ointments and tinctures.  A.R.S § 36-2850 (23).

"**Marijuana concentrate**" means resin extracted from any part of a plant of the genus cannabis and every compound, manufacture, salt, derivative, mixture or preparation of that resin or tetrahydrocannabinol.  Marijuana Concentrate does not include industrial hemp or the weight of any other ingredient combined with cannabis to prepare topical or oral administrations, food, drink or other products.  A.R.S § 36-2850 (20).

95.    Arizona law expressly governs "[t]he potency of *edible* marijuana products that may be sold to consumers by marijuana establishments[.]" (*emphasis added*) A.R.S § 36-2854.

1    96.    Edible Oils are intended for ingestion, meaning they are Edibles.

2    97.    This truth is reinforced by the enacting regulations of the Arizona Marijuana

3  Acts, which define an "Edible food product" as "a substance, beverage, or ingredient used

4  or intended for use or for sale in whole or in part for human oral consumption." AAC R9-

5  17-101(20); AAC R9-18-101 (15).

6    98.    Defendants' marketing only further confirms that Edible Oils are Edible under

7  Arizona law:

> RSO is a whole plant extract providing whole plant benefits. RSO is the product of a simple extraction technique which yields a very high THC concentration while preserving all components of the plant - cannabinoids, terpenes and flavanoids. It is a very dark oil with a thick consistency and can be applied topically, ingested or absorbed sublingually.[7]

12    99.    Arizona expressly recognizes the difference between marijuana concentrates

13  and edible marijuana products.[8]

**MARIJUANA LABELING, PACKAGING, AND WARNING REQUIREMENTS IN ARIZONA**

15    100.    The following must be listed on the package of cannabis products: date of

16  harvest, THC strain and extraction method, laboratory report of impurities, date of

---

[7] *Roll one*, https://www.letsrollone.com/#:~:text=RSO%20is%20a%20whole%20plant%20extract%20providing%20whole,of%20the%20plant%20-%20cannabinoids%2C%20terpenes%20and%20flavanoids. (last visited March 18. 2025).

[8] *See e.g.*, *Recommendations for Best Practices Regarding Marijuana Extractions, Concentrates, Infusion Kitchens and Edible Food Products Containing Marijuana*, p.2; *MARIJUANA LICENSING MANAGEMENT SYSTEM (MLMS) PO/BM Handbook*, p.151, https://www.azdhs.gov/documents/licensing/medical-marijuana/applications/po-bmhandbook. pdf?v= 20241105 (noting that sales product definitions include "Medical Marijuana: The dried flower of the marijuana plant[;] Edibles: Any items sold for consumption that contain medical marijuana. . . [; and] Non-edibles: Any non-edible items, such as concentrates . . ."); *ADHS Facility Licensing Lab Agent Handbook*, p.17, https://www.azdhs.gov/documents/licensing/medical-marijuana/labs/lab-agent-handbook.pdf?v=20221017 (identifying the same categories); *Marijuana Excise Tax Return*, *available at* https://azdor.gov/forms/marijuana-tax-forms/marijuana-excise-tax-return-met-1 (denoting only three categories of product type: "MARIJUANA, EDIBLES, OTHER").

1  manufacture, distribution chain, and health warnings for pregnancy.  A.R.S § 36-2854.01;

2  AAC. R9-18-310.

3     101.   With respect to Edibles, the Arizona legislature imposed limits on the potency

4  which permit "reasonable levels on consideration of industry standards, *except that the*

5  *rules*[:] [ s]hall limit the strength of edible marijuana products to not more than ten

6  milligrams of tetrahydrocannabinol per serving or one hundred milligrams of

7  tetrahydrocannabinol per package; [ and s]hall require that if a marijuana product contains

8  more than one serving, it must be delineated or scored into standard serving sizes and

9  homogenized to ensure uniform disbursement throughout the marijuana product."

10  (*emphasis added*)  A.R.S § 36-2854.

11     102.   The Arizona legislature imposed these limitations to protect the health and

12  safety of the residents of Arizona and other marijuana purchasers, as demonstrated by the

13  State's own required warnings on marijuana products:

> Marijuana can be addictive and can impair an individual's ability to drive a
> motor vehicle or operate heavy machinery.  Marijuana smoke contains
> carcinogens and can lead to an increased risk for cancer, tachycardia,
> hypertension, heart attack, and lung infection.  KEEP OUT OF REACH OF
> CHILDREN.

*See* AAC R9-17-317.

19     103.   Even in the limited research conducted to date, high-potency marijuana

20  products have been linked to a significant risk of psychosis and other psychiatric-related

21  illnesses.[9]

22  / / /

23  / / /

24

---

25  [9] *See e.g. High-potency cannabis and the risk of psychosis*,

26  https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2801827/ (noting that the "most striking
finding is that patients with a first episode of psychosis preferentially used high-potency

27  cannabis preparations of the sinsemilla (skunk) variety" which was a potency level of 12-
18% THC); https://www.hazeldenbettyford.org/research-studies/addiction-research/high-

28  potency-marijuana ("Individuals who used high-potency cannabis on a daily basis were
found to be five times more likely to experience a psychotic disorder than non-users").

104.    With recommendations from the Department of Public Health, the Arizona Marijuana Acts also mandate warnings that include a statement that:

> Marijuana use may affect the health of a pregnant woman and unborn child.
>
> Using marijuana during pregnancy could cause birth defects or other health issues to your unborn child.

A.R.S § 36-2803; 36-2854.

105.    Marijuana establishments, including cultivators and dispensaries, may not: (1) package or label marijuana products in a false or misleading manner; (2) manufacture or sell marijuana products that resemble the form of a human, animal, insect, fruit, toy, or cartoon; or (3) sell or advertise marijuana or marijuana products with names that resemble or imitate food or drink brands marketed to children, or otherwise advertise marijuana or marijuana products to children.  A.R.S § 36-2860.

**ARIZONA DISPENSARY OBLIGATIONS**

106.    A Marijuana Establishment license permits a single retail location at which the license may sell marijuana and marijuana products to consumers.  A.R.S. § 36-2850(21).

107.    Retail locations are referred to as "dispensaries."

108.    Dispensaries are required to ensure that products comply with packaging and labeling requirements under the Arizona Marijuana Acts.  A.A.C. R9-18-310.

109.    Dispensaries must also ensure appropriate potency of products and that the packages do not exceed 100 milligrams each.  A.A.C. R9-18-311; A.A.C. R9-18-313.

110.    Defendants misleadingly characterize Edible Oils as concentrate on their website, thereby making it nearly impossible for the average consumer to ascertain that the Edible Oils are actually Edible products that should be sold in far smaller quantities.

/ / /

/ / /

/ / /

/ / /

/ / /



**COMPARABLE PUBLIC POLICY AND CANNABIS LEGISLATION IN FLORIDA**

111.    The State of Florida authorized medicinal marijuana in reliance on nearly identical public policy as that in the State of Arizona in all relevant and material respects.

112.    Defendants are licensed with the Florida Department of Health to sell cannabis to end users.

113.    Florida's packaging, labeling, and warning requirements are similar to those required under Arizona law and other states.  By way of example, Florida requires warning labels, dosage indications, and use instructions.  *See* Fla. Stat. § 381.986.

114.    Florida's product types are defined and limited in a nearly identical manner to Arizona's in all relevant and material respects.  *See* Fla. Stat. Ann. § 381.986.

---

[10] *Shop Cannabis Concentrates Online - Trulieve*,
https://www.trulieve.com/category/concentrates?filter=brand:24522 (last visited March 18, 2025).

19

115.    Florida law also imposes nearly identical prohibitions on the sale of Edible Oils in packaging exceeding 200-milligrams of THC.

### DEFENDANTS' CONFUSING AND MISLEADING ILLEGAL EDIBLES

116.    Defendants control the products that they choose to sell at their dispensaries.

117.    Defendants also control the marketing, advertising, and packaging content of each of their own brands, in addition to the categories and methods in which they list all products on their shared dispensary website.[11]

118.    Defendants sell and market their own Roll One, Momenta, and third-party Edible Oil Products in 300-milligram, 500-milligram, 1-gram, and 2.5-gram syringes or Dablicators, which are then enclosed in a cardboard package or similar individual per-product sleeve.

119.    Defendants expressly state that their "marketing efforts aim to attract customers with varying levels of awareness of marijuana and Trulieve…with educational materials designed to understand the process required for regulatory compliance."[12]

120.    As Defendants themselves admit, "[c]onnecting with a broader audience requires different strategies that inspire, tap into relevant cultural moments in their lives, build community as well as educate customers on our products' uniqueness versus our competitors.…," stating further that "as Trulieve continues to expand, we are working to deploy a standardized loyalty program to serve markets as appropriate within existing regulatory framework."

121.    Defendants' Code of Ethics and Business Conduct requires all of Trulieve's board members, employees, and subsidiaries to "comply with Trulieve's procedures and processes that have been designed to ensure our conduct is consistent with legal requirements and does not threaten our licenses."[13]

---

[11] *See* https://www.trulieve.com/ (last visited March 18, 2025).

[12] *See* Trulieve 2023 SEC Form 10-K submission, attached to Trulieve 2023 Annual Report, *available at* https://investors.trulieve.com/annual-reports-and-proxy.

[13] Trulieve Code of Ethics and Business Conduct, *available at* https://investors.trulieve.com/governance-documents, p. 5.

122.    Defendants exert this control over their marketing to have Edible Oils listed on dispensary websites as concentrates, despite the fact that they are Edibles.

123.    The listings do not in any way identify the products as being subject to the limitations imposed upon Edibles, that they exceed those limitations, or their status as unlawful marijuana products.



124.    All of this serves to deceive and confuse people into believing that the Edible Oils are legally compliant marijuana concentrates instead of Edibles that exceed the potency by the State of Arizona.

125.    The same holds true for Macro Dose Edible listings, which do not in any way identify the products as being subject to the limitations imposed upon Edibles, that they exceed those limitations, or their status as unlawful marijuana products.

/ / /

/ / /

/ / /

---

14 https://www.trulieve.com/shopd/product/Roll_One-Tru_Verde_RSO-139529421 (last visited March 18, 2025).

21

1
2
3
4
5
6
7
8
9
10



15

11

12    126.    The Arizona Marijuana Acts limits the sale of Edible to no more than 10
13    milligrams of THC per serving and 100 milligrams of THC per package.

14    127.    The Macro Dose Gummies Defendants sell have up to 1,000 milligrams of
15    THC per package, which 10 times the legal limit of THC per package.

16    128.    The Edible Oils Defendants sell have serving amounts of 0.1 gram, which is
17    equivalent to one entire standard package of legally compliant Edibles *i.e.* 10 standard
18    servings.

19    129.    A 2.5-gram Edible Oil product is equivalent to 25 standard packages of
20    Edibles *i.e.* a staggering 200 standard servings.  This is 25 times the amount allowed in one
21    Edible package in Arizona.

22    130.    Defendants' conduct is uniform across the Illegal Edibles they sell.

23    131.    They made no attempt to clarify that the Edible Oils are Edibles under Arizona
24    law, or subject to the additional restrictions and safety requirements placed upon the potency
25    of Edibles.  Defendants failed to do so despite the duties imposed upon them by the Arizona
26    Marijuana Acts.

27

28    [15] https://www.trulieve.com/shopd/product/brix-
Golden_Berry_High_Dose_Single_Gummy-375467807 (last visited March 18, 2025).

132.    Defendants knew or should have known that the Edible Oils were, in fact, Edibles, and subject to dosing and packaging restrictions; yet despite that knowledge, they continue to market and package them as marijuana concentrate, bypassing the requirements imposed upon Edibles, and reaping the benefits of their deception.  These benefits have been substantial to date.

133.    Defendants knew consumers relied on Defendants' information regarding marijuana products and encourage consumers to do so.

134.    In regard to Macro Dose Edibles, Defendants sell products that include single serving products containing nearly 50 – 100 milligrams of THC, which are far above the legal limit of 10 milligrams imposed by Arizona law.

135.    As Defendants' corporate parent, Trulieve Cannabis Corp., describes Arizona as one of their "cornerstone markets" focused on "expanding internal brands, including . . . Roll One."[16]

136.    The unlawful packaging, marketing, and sale of Illegal Edibles at issue here is simply one part of Defendants' branded product playbook to maximize their available efficiencies and beat out their competitors.

137.    This conduct furthers Defendants' "2025 [o]bjectives" to "expand [d]istribution of [b]randed [p]roducts [t]hrough [b]randed [r]etail [l]ocations[,] [i]nvest in cornerstone markets[, including] Arizona."[17]

---

[16] Trulieve August 2024 Investor Presentation, available at https://www.bing.com/ck/a?!&&p=603e1dbbe2ef75d59856e7ab484f3a03f6e31e9f5c0fa7adebf0482e4c6f7f26JmltdHM9MTc0MjI1NjAwMA&ptn=3&ver=2&hsh=4&fclid=3f0d6540-7933-6ce6-2f6b-717c78a06dac&psq=site%3afilecache.investorroom.com+Trulieve+August+2024+Investor+Presentation&u=a1aHR0cHM6Ly9maWxlY2FjaGUuaW52ZXN0b3Jyb29tLmNvbS9tcjVpVpcmNud190cnVsaWVWV2ZS80NzMvMvZG93bmxvYWQvVHJ1bGlldmVfSW52ZXN0b3JfUHJlc2VudGF0aW9uX0F1Z3VzdF8yMDI0LnBkZg&ntb=1, p.13.

[17] Trulieve Fourth Quarter 2024 Earnings Presentation, *available at* https://investors.trulieve.com/download/Trulieve_Q4_2024_Earnings_Presentation_022725.pdf .

23

## ALLEGATIONS SPECIFIC TO PLAINTIFF

138.   On or around January 29, 2025, among various other instances, Plaintiff made a recreational purchase of a Roll One 1-gram Hybrid Bubba Fett RSO Syringe from Trulieve in Glendale, Arizona.

139.   Plaintiff purchased the Syringe in-person with cash by asking the sales associate which RSO products they had available for sale and verbally choosing a product for purchase.

140.   Plaintiff did not provide his phone number or e-mail address at the point of sale.

141.   The sale was a person-to-person transaction utilizing cash.

142.   Plaintiff has never created a Trulieve account or otherwise visited Trulieve's websites.

143.   Plaintiff's total for the purchase shown on Plaintiff's receipt was $30.00 before the application of any taxes or discounts.

144.   Plaintiff relied on Defendants' representations that their products were compliant and safe, based on their status and holding themselves out as licensed marijuana establishments under the State's robust regulatory structure, and reasonably assumed compliance with same in purchasing the Edible Oil product.

145.   While Edible Oils Defendants sell are for oral ingestion, and definitionally Edibles, they universally contain more THC than is allowed for a single Edible package under the Arizona Marijuana Acts.

146.   Plaintiff relied on Defendants' representations and the information and labels on the Edible Oil in deciding to purchase the Edible Oil – he reasonably believed that Defendants were in compliance with applicable laws and that the Edible Oil sold by Defendants was legal.

147.   Plaintiff did not know that the Edible Oil was in fact *not* compliant with the law.

148.    Plaintiff would not have purchased the Edible Oil had Plaintiff known that it was not legal. Moreover, Plaintiff would not have been able to lawfully purchase it, as the sale was prohibited by the Arizona Marijuana Acts.

149.    The Edible Oil is substantially less valuable (and in fact worthless) because it does not comply with the marijuana standards set out by the State of Arizona, including that it is not appropriately dosed.

150.    Plaintiff was misled and harmed because of Defendants' conduct.

## CLASS ACTION ALLEGATIONS

151.    Plaintiff brings claims individually and on behalf of the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23:

> Class: All persons who, within the applicable limitations period, purchased Illegal Edibles from any Trulieve dispensary in the States of Arizona, Florida and other Similarly Situated States.

> Sub-Class: All persons who, within the applicable limitations period, purchased Illegal Edibles from any Trulieve dispensary in the State of Arizona.

152.    Excluded from the Classes are: (1) Defendants; (2) Defendants' officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action and the members of their family; (4) persons who properly execute and file a timely request for exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defense counsel, and their experts and consultants.

153.    **Numerosity**.  The proposed Classes contains members so numerous that separate joinder of each member of the Classes is impracticable.  The total sales of Illegal Edibles during the applicable statutory period is in the millions and there are thousands of proposed class members.  The individuals who purchased Illegal Edibles can be ascertained through records in the possession, custody, or control of Defendants.

154. **Commonality and Predominance**.  There are questions of fact or law common to the Classes, which common questions predominate over any questions affecting only individual members, including but not limited to the following:

- Whether Defendants misled consumers into purchasing Illegal Edibles;
- Whether Defendants misrepresented or concealed material facts about the Illegal Edibles, including the nature of the products and safety of using them;
- Whether Defendants improperly labeled and advertised the Illegal Edibles;
- Whether the Defendants violated the Arizona Consumer Fraud Act and similar laws when they sold to consumers the Illegal Edibles;
- Whether Defendants acted with deliberate indifference to the safety risks posed by the Illegal Edibles.

155. **Typicality and Adequacy**.  Plaintiff's claims are typical of the Class Members' claims insofar as they are identical and Plaintiff has no circumstances antagonist to the Classes.

156. **Superiority**.  A class action is the superior mechanism for the fair and efficient adjudication of this controversy.

<u>**CLAIMS FOR RELIEF**</u>

<u>**COUNT I**</u>
**Violation of Arizona Consumer Fraud Act, A.R.S § 44-1521, *et seq.***
**on behalf of Plaintiff and the Sub-Class**

157. Plaintiff incorporates the foregoing Paragraphs as if fully stated herein.

158. Plaintiff, Members of the Classes, and Defendants are "persons" within the meaning of the Arizona Consumer Fraud Act ("ACFA"). A.R.S § 44-1521(6).

159. At all times mentioned herein, Defendants engaged in the "sale of merchandise" in Arizona as defined by A.R.S § 44-1521(7), by engaging in the offering and sale of things of value in Arizona.

160. The ACFA declares that use or employment by any 'person,' including Defendants, of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact

with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice. A.R.S. § 44-1522(A).

161. Plaintiff and Class Members purchased Illegal Edibles manufactured, marketed, and/or sold by Defendants.

162. Defendants misrepresented the Illegal Edibles through statements, omissions, ambiguities, half-truths, and/or actions and engaged in unfair or deceptive acts or practices prohibited by the ACFA by engaging in the following, among other conduct.

163. In violation of the Arizona Marijuana Acts, Defendants manufactured, marketed, and sold unlawful and dangerous Illegal Edibles containing volumes of THC (0.5-grams/500-milligram, 1-gram/1,000-milligram, or 2.5-gram/2,500-milligran) and in dosages (more than 10 mg) in excess of those allowed by law for Edibles – the production, sale, and marketing of which is expressly prohibited by the Arizona Marijuana Acts.

164. Defendants accomplished this through a number of deceptions, misrepresentations, omissions, concealments, and other unfair conduct. Defendants undertook this conduct with the intent that consumers and others would rely on their deceptive and unfair schemes, so they could unlawfully market, sell, and profit off of various Edibles being sold as, and adopting the potency limits of, marijuana concentrate, without any regard to the legal requirements imposed on Edibles.

165. As alleged, Defendants' marketing, packaging, advertising, and business practices were rife with deception.

166. Specifically, Defendants each systematically misrepresented that the Illegal Edibles were compliant marijuana concentrate by ensuring that they were packaged, dosed, labeled, and sold as such on their own websites as well as those of other retailers, with the intent that the Illegal Edibles be sold as marijuana concentrate, resulting in the sale of Edibles in quantities and concentrations which were unsafe and unlawful.

167.    Defendants each controlled the marketing of the products at issue, guaranteeing the Illegal Edibles were packed, dosed, and marketed as "concentrate" in their own advertising and educational materials, as well as that which they imposed upon other retailers and in their own Trulieve dispensaries.

168.    Defendants undertook the marketing, advertising, labeling, and selling of Illegal Edibles with the intent that consumers rely on the representations made therein.

169.    Defendants omitted and actively concealed information from Plaintiff, the Classes, and other consumers, that was not only material to each transaction, but that Defendants were duty bound to provide under the Arizona Marijuana Acts.

170.    Defendants concealed the fact that the products they were selling were being sold unlawfully, and that the products did not comply with Arizona law.  Defendants did so by consistently representing their unlawful products were other categories of products that were potentially lawful, namely, compliant marijuana concentrates, in order to conceal their true nature and statutory limitations.

171.    Moreover, all Edibles are required to be labeled and packaged at the point of preparation, where each product shall contain no more than 10-milligrams of THC per serving or 100-milligrams of THC per package.  A.R.S. § 36-2854(A)(7).

172.    However, here, Defendants failed at any time to properly classify their products with other Edibles, omitting their status as Edibles, and instead promoting and selling them without the safety measures required by the State of Arizona – namely, dosing and per-package THC limitations imposed on Edibles.

173.    Defendants knowingly and/or recklessly did so in order to avoid the regulations associated with Devices (*e.g.* smaller amounts of THC per-package and safe dosages), allowing Defendants to sell more products per package.

174.    Defendants knew their products were legally defined as Edibles, meaning they were limited to 10 milligrams of THC per serving or 100 milligrams of THC per package.

175.    By selling Edibles as marijuana concentrate, Defendants were able to sell much larger quantities of processed marijuana by volume through the increased per-package limits – quantities that violated Arizona law.

176.    This conduct, and the conduct generally alleged herein, constitute deceptive practices under the ACFA.

177.    Defendants undertook this scheme of conduct in a systematic, knowing, and reckless manner.  The deceptive conduct pervades their product descriptions, marketing, and public statements.  Defendants made the deceptive representations and omissions or concealment of material fact discussed above with the intent that Plaintiff and other consumers rely upon them in determining that the Illegal Edibles were lawful and whether to purchase them or a competing product.

178.    Defendants' improper conduct is misleading in a material way in that it induced Plaintiff and the Class Members to purchase and/or pay for Illegal Edibles when they otherwise would not have.  Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and/or with reckless disregard for the truth.

179.    Plaintiff and Class Members were exposed to, and reasonably relied upon, Defendants' deceptive representations when they purchased Illegal Edibles from Defendants' dispensaries across the State of Arizona, believing they had purchased lawful, safe products, in compliance with the Arizona Marijuana Acts.

180.    Plaintiff and Class Members were harmed in the full amount of the monies paid for the Illegal Edibles purchased, as they were not lawfully placed into commerce by Defendants and were willfully, wantonly, and/or with reckless disregard for the truth, marketed by Defendants as being compliant with the Arizona Marijuana Acts (they are not), lawful for an individual to possess in many instances (they are not), and not unnecessarily dangerous (they are), in contravention of the Arizona Marijuana Acts.

181.    Defendants' conduct also amounts to a series of unfair practices.

182.    As discussed at length, Defendants' conduct offends the public policy of the State of Arizona, including, at a minimum, the Arizona Marijuana Acts, Department of

Agriculture, Department of Public Health, and related governmental regulations, and basic public policies aimed at protecting consumers and ensuring that marijuana products are offered safely and legally in Arizona.

183.   As discussed, Defendants' conduct violates the strict requirements of the Arizona Marijuana Acts which defines marijuana concentrate, marijuana products, edible food products, and their packaging, labelling, and related restrictions.

184.   Defendants categorized the Illegal Edibles as marijuana concentrate in order to sell greater volumes of the product per package, violating the potency limits imposed upon the purchaser.

185.   In doing so, Defendants unlawfully promoted the unregulated overconsumption of marijuana by marketing, promoting, and selling improperly labeled and packaged marijuana products that fail to feature or conform to the safeguards against overconsumption imposed by the Arizona Marijuana Acts.  Specifically, safety labels, serving size limits, serving size identification, and legal quantity limits.

186.   Defendants' conduct foils the purpose and intent of the Arizona Marijuana Acts by undermining Arizona residents' right to access safe and legal marijuana in a regulated and controlled market.

187.   Defendants' pursuit of profit in disregard of the Arizona Marijuana Acts and their safety requirements is not only unethical and unscrupulous, but also immoral and oppressive.

188.   These are dangers sought to be mitigated by the Arizona Marijuana Acts through their dosing, labeling, and packaging requirements, which expressly prohibit a marijuana establishment from packaging or labeling marijuana or marijuana products in a false or misleading manner.  A.R.S § 36-2860(A)(1).

189.   As such, Defendants' conduct amounts to a pervasive and systemic series of acts done in violation of the requirements of the Arizona Marijuana Acts and their enabling regulation in order to advance Defendants' own interests and increase profits.

190.    The requirements imposed upon Defendants by the Arizona Marijuana Acts serve the public policy of Arizona by promoting and preserving the health and safety of its residents in the face of a dangerous industry.  To further this, the Arizona Marijuana Acts recognize the lack of consumer and purchaser knowledge regarding marijuana in all its forms, as well as the laws and regulations that govern its purchase and consumption.

191.    The Arizona Marijuana Acts imposed the regulations, which were ignored and violated by Defendants, in order to remedy the potential harms caused by this lack of knowledge, and shift the duty of education and legal compliance to marijuana companies like Defendants – a duty that Defendants failed to uphold here.

192.    As such, Defendants' conduct is wholly unfair to the people of the State of Arizona, as well as those visiting Arizona and consuming marijuana in reliance on the public policies and laws of the State, and in contravention of the public policy goals of the legislation in passing the Arizona Marijuana Laws.  The only benefit it provides to any party is the reduced compliance costs and increased profits enjoyed by Defendants as a result of their conduct.

193.    Plaintiff and Class Members would not have purchased Illegal Edibles but for Defendants' deceptive and unfair conduct described herein.  As Plaintiff and the Class Members would not and could not have purchased an unlawful product, and would have purchased a legally compliant alternative instead.

194.    For the reasons discussed herein, Defendants violated and continue to violate ACFA by engaging in the deceptive or unfair acts or practices prohibited by A.R.S § 44-1521.

195.    Plaintiff and Class Members are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees, and any other penalties or awards that may be appropriate under the law.

**COUNT II**
**Violations of State Consumer Protection Acts**
**on behalf of Plaintiff and the Class**

196.    Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully

stated herein.

197.    Plaintiff brings this count on behalf of himself and the Class for violations of Arizona consumer protection laws and those of states that are materially similar to the laws of Arizona, including Florida. *See* FSA § 501.201 *et seq.*

198.    The Florida statute is materially similar to Arizona's insofar as it also prohibits the sale of illegal products to unknowing consumers and other deceptive and misleading conduct in connection with the sale of goods to consumers.

199.    Each of the statutes forbids as unlawful any unfair or unconscionable methods of competition or commercial practices, as well as deceptive acts or practices. *See* Fla. Stat. § 501.204; 815 ILCS 505/2.

200.    Arizona's and Florida's cannabis laws and public policy are also materially similar, insofar as, for the public safety, they limit the quantity of ingestible THC that may be sold in one package to 100-200 mg THC, render sale of the products alleged herein illegal, and impose similarly stringent restrictions on individual possession and packaging and labeling requirements. *See* FSA § 381.986 *et seq.*

201.    As alleged in detail herein, Defendants' conduct was misleading to a reasonable consumer in a material way.  This conduct impacted Plaintiff's purchasing decisions and the purchasing decisions of the putative Class Members.

202.    Defendants' conduct, as alleged herein, constitutes recurring unlawful deceptive acts and practices as well as unlawful unfair or unconscionable methods of competition or commercial practices under Arizona and Florida law.  Fla. Stat. § 501.204.

203.    Defendants misleadingly, deceptively, unfairly, and unconscionably present their Illegal Edibles as legal products meeting the potency requirements of Arizona and Florida law.

204.    Plaintiff and Class Members were injured as a direct and proximate result of Defendants' conduct because: (a) they would not have purchased Illegal Edibles if they knew it was not legal or appropriately labeled; (b) they would have paid less for Illegal

Edibles if they knew it was illegal and not appropriately labeled; and (c) they received products there were, in truth, worthless.

205.    Plaintiff and Class Members are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees, and any other penalties or awards that may be appropriate under the law.

<u>**COUNT III**</u>
**Common Law Fraud**
**on behalf of Plaintiff and Class**

206.    Plaintiff incorporates the foregoing Paragraphs as if fully stated herein.

207.    Defendants made continuous representations through their marketing materials, packaging labels, and website that the Edible Oils were marijuana concentrates and Macro Dose Gummies complied with the Arizona Marijuana Acts.

208.    These representations were false and material.

209.    The Illegal Edibles do not comply with the Arizona Marijuana Acts which govern the packaging and labelling of Edibles.

210.    Defendants know that the Illegal Edibles they sell and produce are actually Edibles that did not comply with the requirements of the Arizona Marijuana Acts or corresponding laws and that were prohibited from being sold to Plaintiff and Classes.

211.    Defendants' material misrepresentations operate as an inducement to Plaintiff and the Classes to purchase Illegal Edibles that, except for such inducement, they would not have purchased.  It was Defendants' intent that their inducement would lead to consumers like Plaintiff and the Classes purchasing Illegal Edibles thinking that they were compliant marijuana concentrates.

212.    Plaintiff and the Classes trusted and relied upon Defendants marketing materials and package labels to be truthful, and did not know that these materials were false.

213.    Plaintiff and the Classes were reasonable in, and had a right to, their reliance on Defendants' omissions and misrepresentations due to the imposition of a strict regulatory regime on Defendants and other cultivators to ensure their knowledge of the laws and products they produce, market, and sell as a matter of public policy.

214. Defendants' material misrepresentations are intentional. Their intention is for consumers like Plaintiff and the Classes to purchase Illegal Edibles, regardless of their illegal nature.

215. Plaintiff and the Classes suffered harm as a result of Defendants' misrepresentations and omissions.

216. Plaintiff and the Classes would not have purchased Illegal Edibles had Defendants not omitted or concealed their unlawful nature, as they would not and could not have purchased an unlawful product and would have purchased a legally compliant alternative instead.

217. As a direct and proximate cause of Defendants' conduct, Plaintiff and the Classes are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees, and any other penalties or awards that may be appropriate under applicable law.

**COUNT IV**
**Fraudulent Concealment**
**on behalf of Plaintiff and Class**

218. Plaintiff incorporates the foregoing Paragraphs as if fully stated herein.

219. Defendants knew that the Illegal Edibles they produced and sold did not comply with the requirements of the Arizona Marijuana Acts or corresponding laws in Similar States and were prohibited from being sold to Plaintiff and Class.

220. Defendants' marketing omitted or concealed the fact that the Illegal Edibles were unlawful, and unable to be sold by Defendants, any dispensary, or purchased or possessed by consumers. Defendants' marketing further omitted or concealed the fact that the Illegal Edibles were non-compliant Edibles. Instead marketing them as marijuana concentrate, which is subject to different packaging requirements.

221. As Defendants were required by the Arizona Marijuana Acts to know the regulations and requirements of the law, they had knowledge that their Edible Oils were Edibles and were not in compliance with the Arizona Marijuana Acts,

222. It was not within reasonably diligent attention, observation, and judgement of Plaintiff and the Putative Class that the Illegal Edibles were not only being miscategorized

1   as marijuana concentrate, but were noncompliant with the Arizona Marijuana Acts.  That

2   Defendants were actually concealing or suppressing these material facts was not known to

3   Plaintiff and the Class given the complex and highly regulated nature of the marijuana

4   industry.

5        223.   Defendants concealed and omitted the fact that the Edible Oils and Macro

6   Dose Edibles were actually unlawful Edibles with the intention that Plaintiff be misled as

7   to the true condition of the Illegal Edibles – that they do not comply with state marijuana

8   laws.

9        224.   Plaintiff and the Class were reasonably misled by Defendants' omissions and

10   concealment of the true nature of the Illegal Edibles they manufactured and sold.

11        225.   Plaintiff and the Class suffered harm as a result of Defendants' omissions and

12   concealment.

13        226.   Plaintiff and the Class would not have purchased the Illegal Edibles had

14   Defendants not omitted or concealed their unlawful nature, as they would not and could not

15   have purchased an unlawful product and would have purchased a legally compliant

16   alternative instead.

17        227.   As a direct and proximate cause of Defendants' conduct, Plaintiff and Classes

18   Members are entitled to damages in an amount to be proven at trial, reasonable attorneys'

19   fees, and any other penalties or awards that may be appropriate under applicable law.

20                                   **COUNT V**
                                **Breach of Express Warranty**
21                          **on behalf of Plaintiff and the Classes**

22        228.   Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully

23   stated herein.

24        229.   Plaintiff and each other Class Member formed a contract with Defendants at

25   the time they purchased Illegal Edibles.  The terms of the contract include the promises and

26   affirmations of fact made by Defendants on their website and in stores, and through

27   marketing and advertising, including that the Illegal Edibles would be of the quality and

28   character as represented including but not limited to statements about the legality, safety,

dosage, and efficacy of the product, in addition to the lack of disclosure regarding possession limitations.

230.    This marketing, listing, and packing constitute express warranties and became part of the basis of the bargain, and are part of the standardized expectation between Class Members and Defendants.

231.    Defendants expressly warranted that the products it sold were legal, safe, effective, and appropriately dosed, and did not contain any undisclosed risks.

232.    Defendants made these misrepresentations, or omitted material information, in their marketing (including their website and dispensary listings) for the Illegal Edibles.

233.    Defendants sold Illegal Edibles that they expressly warranted were legal, safe, effective, and appropriately dosed marijuana products that did not contain any undisclosed risks.

234.    The Illegal Edibles did not conform to Defendants' express representations and warranties because the products contained undisclosed risks.

235.    At all times relevant times, Arizona and all other states had codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose.

236.    At the time Defendants marketed and sold Illegal Edibles it recognized the purposes for which the products would be used, and expressly warranted the products were legal, safe, effective and appropriately dosed for intended use, and did not contain any undisclosed risk.  These affirmative representations became part of the basis of the bargain in every purchase.

237.    Defendants breached their express warranties with respect to the Illegal Edibles as they were not of merchantable quality and were not fit for their ordinary purpose. Defendants promised legal, safe, effective, and appropriately dosed products, but the Illegal Edibles were not as promised because their actual legal and safety profile was not the same as that represented and bargained for.

238.    Plaintiff and each other Class Members would not have purchased the Illegal Edibles had they known these products carried undisclosed risks, or alternatively would not have purchased them on the same terms (e.g., purchased them for substantially less).

239.    To the extent applicable, direct privity is not required between Defendants and Plaintiff or each other Class Members because among other things, Defendants are a manufacturer and made direct statements about the safety of their products and intended their statements and affirmations to flow to Plaintiff and each other Class Members.

240.    Defendants directly sold the Illegal Edibles to each Class Member.

241.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff and each other Class Members have been injured and suffered damages in the amount of the purchase price of the Illegal Edible, in that the Illegal Edibles they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

242.    Defendants, as the operators of licensed cannabis businesses, were required by those states, here Arizona and Florida, to have, and did have, actual knowledge that their Illegal Edibles were not only unlawful products, but they also failed to conform to the express representations and warranties Defendants had made regarding them.

243.    Because Defendants had actual knowledge that their Illegal Edibles were unlawful, and failed to conform to the express representations and warranties made regarding the Illegal Edibles, pre-suit notice of Plaintiff's claim is not required.

**COUNT VI**
**Breach of Implied Warranty**
**on behalf of Plaintiff and the Classes**

244.    Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

245.    Plaintiff and each other Class Member formed a contract with Defendants at the time they purchased Illegal Edibles.  The terms of the contract include the promises and affirmations of fact made by Defendants on their website and in stores, and through marketing and advertising, including that the Illegal Edibles would be of the quality and character as represented including but not limited to statements about the legality, safety,

dosage, and efficacy of the product, in addition to the lack of disclosure regarding possession limitations.

246.    The foregoing constitute implied warranties and became part of the basis of the bargain, and are part of the standardized expectation between Class Members and Defendants.

247.    Defendants impliedly warranted that Illegal Edibles were legal, safe, effective, and appropriately dosed for intended use, and did not contain any undisclosed risks.

248.    Defendants made these misrepresentations, or omitted material information, in their marketing (including their website and social media) for the Illegal Edibles.

249.    Defendants sold Illegal Edibles that they impliedly warranted were legal, safe and effective marijuana products that did not contain any undisclosed risks.

250.    The Illegal Edibles Defendants sold did not conform to their implied representations and warranties because the products contained undisclosed risks.

251.    At all times relevant times, Arizona and all other states had codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose.

252.    At the time Defendants marketed and sold the Illegal Edibles, Defendants recognized the purposes for which the products would be used, and impliedly warranted the products were legal, safe, effective, and appropriately dosed for intended use, and did not contain any undisclosed risk.  These representations became part of the basis of the bargain in every purchase.

253.    Defendants breached their implied warranties with respect to the sale of Illegal Edibles, as they were not of merchantable quality or fit for their ordinary purpose. Defendants promised a legal, safe, effective, and appropriately dosed product, but the Illegal Edibles were not as promised because their actual safety profile was not the same as that represented and bargained for.

254.    Plaintiff and each other Class Member would not have purchased the Illegal Edibles had they known these products carried undisclosed risks and were illegal, or alternatively would not have purchase them on the same terms (*e.g.*, purchased them for substantially less).

255.    To the extent applicable, direct privity is not required between Defendants and Plaintiff or each other Class Members because among other things, Defendants are a manufacturer and made direct statements about the safety of their products, and intended their statements and affirmations to flow to Plaintiff and each other Class Members.

256.    Ultimately, in many instances, Defendants were also the end retailer of their products, and direct privity exists, even if it is not required.

257.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff and each other Class Members have been injured and suffered damages in the amount of the purchase price of the Illegal Edibles, in that the Illegal Edibles they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

258.    Defendants, as the operators of licensed cannabis businesses, were required by those states, here Arizona and Florida, to have, and did have, actual knowledge that their Illegal Edibles were not only unlawful products, but they also failed to conform to the express representations and warranties Defendants had made regarding them.

259.    Because Defendants had actual knowledge that their Illegal Edibles were unlawful, and failed to conform to the express representations and warranties made regarding the Illegal Edibles, pre-suit notice of Plaintiff's claim is not required.

## COUNT VII
### Negligence
### on behalf of Plaintiff and the Class

260.    Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

261.    Defendants owed a duty to Plaintiff and each Class Member to ensure the products they sold were legal, safe, and effective, and did not contain any undisclosed active risks.

262.    Defendants owed a duty to Plaintiff and each Class Member because the latter were foreseeable, reasonable, and likely purchasers and users of the Illegal Edibles, and victims of Defendants' deceptive and wrongful conduct.  Defendants knew, or should have known, that the Illegal Edibles were not legal, safe, or effective, and contained undisclosed risks.

263.    Defendants inadequately oversaw their own retail, marketing, regulatory compliance, and sale of the Illegal Edibles, resulting in the Illegal Edibles being sold to consumers without disclosure of the true character of the product.

264.    Defendants maintained or should have maintained a special relationship with Plaintiff and each Class Member, who were anticipated or intended direct and intended third-party beneficiaries, as it was obligated to ensure that the Edibles it sold were legal, safe and effective, and did not contain any undisclosed risks.

265.    Defendants' own actions and inactions created a foreseeable risk of harm to Plaintiff and each Class Member.

266.    Defendants breached duties owed to Plaintiff and each Class Member by failing to exercise reasonable care sufficient to protect the interests and meet the needs of Plaintiff and each Class Member.

267.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and each other class member suffered injury and are entitled to damages in an amount to be proven at trial.

### COUNT VIII
### Unjust Enrichment on behalf of Plaintiff and Class
### (*In the Alternative to Counts V and VI*)

268.    Plaintiff incorporates the allegations in Paragraphs 1 – 156 as if fully stated herein.

269.    To the extent that the Court finds that the transactions to sell Illegal Edibles as alleged herein constitute a contract, such contract is *void ab initio* as a contract for the sale of unlawful goods, with non-compliant Illegal Edibles as the subject of each transaction.

270.    By manufacturing, advertising, marketing, selling, and profiting off of the sale of unlawful products to Plaintiff and the Class, Defendants were unjustly enriched by their unlawful conduct.

271.    Defendants' unjust enrichment occurred to the detriment of Plaintiff and members of the Classes.

272.    The benefit retained by Defendants is far greater than the monies paid by Plaintiff and members of the Classes, as Defendants are not only enriched by the funds which they have received from Plaintiff and members of the Classes in exchange for Defendants' unlawful products, but Defendants' also benefit by reducing what would ordinarily be necessary compliance expenses to ensure their products are safe and compliant or properly labelled and packaged, further enriching them to the detriment of consumers, including Plaintiff and the Classes.

273.    Defendants have thus been unjustly enriched by at least the amount that Plaintiff and each member of the Classes spent on the Illegal Edibles and any associated interest. It would be unjust to allow Defendants to retain this enrichment.

274.    Defendants' retention of these monetary benefits violates fundamental principles of justice, equity, and good conscience.

275.    Plaintiff and the other members of the Classes are entitled to restitution in the amount by which Defendants have been unjustly enriched to Plaintiff and the Class Members' detriment, and an order requiring Defendants to disgorge any additional profits or other benefit they have retained as a result of their unjust and unlawful conduct.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themself and all others similarly situated, respectfully requests that the Court enter an order awarding the following relief as plead in the foregoing and judgment against Defendants, and each of them, as follows:

41

a.   An Order certifying the Classes, defining the Classes as requested herein, appointing Plaintiff class representative, and appointing their counsel as class counsel;

b.   An award of any actual, compensatory, and enhanced damages permitted to Plaintiff and other Class Members, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

c.   An award of punitive damages for Defendants' misconduct and deliberate indifference;

d.   An award of reasonable attorneys' fees, costs, and other litigation expenses;

e.   An award of pre- and post-judgment interest as available under law;

f.   The disgorgement of any funds in the amount Defendants were unjustly enriched by their conduct;

g.   Declaratory judgment that the Illegal Edibles are non-compliant with the Arizona Marijuana Acts, Florida's cannabis laws, and other applicable laws, rules and regulations; and

h.   Such further and other relief as the Court deems just, reasonable, and equitable.

DATED:  March 21, 2025.

**FRANKEL SYVERSON PLLC**
By _____s/ Patricia N. Syverson_____
Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

**FRANKEL SYVERSON PLLC**
Ty D. Frankel
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016

**LUISI HOLZ LAW**
Laura Luisi (to be admitted *Pro Hac Vice*)
Jamie Holz (to be admitted *Pro Hac Vice*)
161 N. Clark Street, Suite 1600
Chicago, Illinois 60601

*Attorneys for Plaintiff and the Putative Class*